PC SCAN



RECEIVED

4/1/2019 YT

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAURICE COLEMAN

_____

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

**19CV2211
JUDGE DOW JR.
MAGISTRATE JUDGE ROWLAND
PC4**

vs.

DOROTHY BROWN · CLERK OF THE

CIRCUIT COURT OF COOK COUNTY ~ IN HER

INDIVIDUAL OFFICAL CAPACITIES

KIM FOXX · STATE ATTORNEY OF COOK

COUNTY: IN HER INDIVIDUAL OFFICIAL

CAPACITIES

Case No: _____
(To be supplied by the Clerk of this Court)

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

___✓___  **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
U.S. Code (state, county, or municipal defendants)

_____  **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331** U.S. Code (federal defendants)

_____  **OTHER** (cite statute, if known)

_BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY._

I. **Plaintiff(s):**

    A.    Name: MAURICE COLEMAN

    B.    List all aliases: N/A

    C.    Prisoner identification number: A25160

    D.    Place of present confinement: STATEVILLE CORRECTIONAL CENTER

    E.    Address: 

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

    A.    Defendant: DOROTHY BROWN

           Title: CLERK OF THE CIRCUIT COURT OF COOK COUNTY

           Place of Employment: CIRCUIT CLERK'S OFFICE OF COOK COUNTY

    B.    Defendant: KIM FOXX

           Title: STATE'S ATTORNEY OF COOK COUNTY

           Place of Employment: COOK COUNTY STATES ATTORNEY OFFICE

    C.    Defendant: 

           Title: 

           Place of Employment: 

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: _MAURICE COLEMAN -VS- I D.OC._

B. Approximate date of filing lawsuit: _Round /or About 1989_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _Dan E_

D. List all defendants: _I D.oC._

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

F. Name of judge to whom case was assigned: _Don't REMEMBER_

G. Basic claim made: _Don't REMEMbER_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Dis Missed._

I. Approximate date of disposition: _Sometime In 1988/or 1989_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

IV. **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

NOW COMES PLAINTIFF, MAURICE COLEMAN, PRO.SE AND ALLEGES AS FOLLOWS. MAURICE COLEMAN IS A PRISONER CURRENTLY RESIDING AT

1) STATEVILLE CORRECTIONAL CENTER AND HAS BEEN CONTINUOUSLY INCARCERATED SINCE 1881. 2) ON APRIL 6, 2017, PLAINTIFF MAILED HIS 2-1401 PETITION ALONG WITH ALL THE APPENDIX'S TO THE CLERK OF THE CIRCUIT COURT OF COOK COUNTY OF ILLINOIS, AT 2650 SO. CALIFORNIA, AVE, CHICAGO ILL 60608. WITH THE INTENT TO HAVE HIS 2-1401 PETITION FILED WITH THE COURT. 3) PLAINTIFF MAILED HIS 2-1401 PETITION ALONG WITH ALL THE APPENDIX'S TO THE CLERK OF THE CIRCUIT COURT OF COOK COUNTY BY CERTIFIED MAIL WITH THE TRACKING/ARTICLE NUMBER OF 7016 0340 0008 6429 3931. 4) PLAINTIFF MAILED A COPY OF HIS 2-1401 PETITION ALONG WITH ALL THE APPENDIX'S BY CERTIFIED MAIL TO THE STATE'S ATTORNEY K IM FOX. WITH THE TRACKING/ARTICLE NUMBER OF 7016 0340 0000 6429 3955. 5) PLAINTIFF WAITED ABOUT 6 MONTHS AFTER HIS FILING OF HIS 2-1401 PETITION BEFORE HE FILED A MOTION FOR DEFAULT JUDGMENT. 6) AS OF THIS DATE PLAINTIFF STILL HAVE NOT RECEIVED ANY KIND OF RESPONSE FROM THE CLERK OF THE CIRCUIT COURT, CONCERNING HIS 2-1401 PETITION NOR ANY RESPONSE TO THE FILING OF HIS MOTION FOR

Judgment by Default. 7) Plaintiff mailed a petition of mandamus to the clerk of the circuit court of Cook County, at 2650 So. California Ave. Chicago, Ill. 60608, with the intent of having the petition of mandamus filed with the court concerning his 2-1401 Petition. 8) Plaintiff mailed a letter to the clerk of the circuit court of Cook County and a proof of service, asking the clerk of the court, what was going with his 2-1401 petition which was received by their office on April 18, 2017. In the same letter plaintiff inquired about his motion for default judgment. 9) As of this date plaintiff still has not received any kind of response to his 2-1401 petition he filed, nor any kind of response to his motion for default judgment, nor any kind of response to his mandamus petition he filed, nor any kind of response to his letter asking about the above mention documents. 10) Plaintiff filed with the Supreme Court of Illinois, motion for leave to file a petition for an original writ of mandamus, this was on April 3, 2018. This filing to the Supreme Court concerning the circuit court clerk's (non respondeness to the above mention documents) 11) Defendant, Dorothy Brown is the Cook County circuit court clerk. Among her responsiblities are the reception filing and docking of documents mailed to the court. At all relevant times defendant Brown was the clerk of the circuit court. 12) Defendant Brown as clerk of the circuit court is empowered by law to employ, hire and train personnel to assist in

IN THE OLIGATION OF THE OFFICE OF THE CLERK OF THE CIRCUIT COURT.

13) DEFENDANT, KIM FOXX IS THE STATES ATTORNEY OF COOK COUNTY AMONG HER RESPONABILIES AND DUTIES. KIM FOXX IS GENERAL COUNSEL FOR ALL COOK COUNTY PERSONEL AND OVERSEES CIRCUIT COURT FILINGS. 14) KIM FOX AS STATE'S ATTORNEY OF COOK COUNTY IS ENPOWERED BY LAW TO EMPOLY HIRE AND TRAID PERSONNEL TO ASSIST IN THE OBLIGATION OF THE OFFICE OF THE STATE'S ATTORNEY.

15) DEFENDANT'S ARE BEING SUED IN THEIR INDIVUDAL AND OFFICAL CAPACITY.

## CLAIM ONE

### OBSTRUCTION AN DENIAL OF ACCESS TO THE COURT

16) PLAINTIFF INCORPORATES BY REFERENCE 1-15 AND FOR THIS PAR-AGRAPH 16.

17) PER. U.S. CONST. AMEND 1. PLAINTIFF HAS A RIGHT OF ACCESS TO THE COURTS WHICH SHALL NOT BE IDFRIENGED.

18) THE CIRCUIT CLERK OF THE COURT HAS CONSTITUTIONAL AND STATUTORY DUTIES TO FACILITATE ACESS TO THE COURT.

19) PLAINTIFF RIGHTS OF ACCESS TO THE COURTS WAS DENIED HIM IN THAT THE CIRCUIT COURT CLERK AND HER DESIGNESS FAILED TO:

A) FILE THE PLAINTIFF'S 2-1401 PETITION.

B) RESPODED TO PLAINTIFF'S 2-1401 PETITION

C) RESPONDED TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT.

D) RESPONDED TO PLAINTIFF'S MOTION FOR MANDAMUS.

E) RESPONDED TO PLAINTIFF'S LETTER TO CLERK OF THE CIRCUIT COURT PROVIDING ANY INFORMATION.

20) PLAINTIFF HAS INCURRED INJURIES BY DEFENDANT BROWN AND HER DESIGNESS. ~~OBSTRUCTION AN~~ ACTIONS IN THAT.

A) LOSS OF TIME WITH FAMILY.

B) LOSS POSTAGE/ COPYING MONEY.

C) LOSS OF TRUST FOR THE PROCESS OF ACCESS TO THE COURT.

D) LOSS OF WAGES AT THE RATE OF AT LEASE $8.00.00 PER HOUR.

---

## CLAIM NUMBER TWO
### INTENTIONAL DENIAL OF ACCESS TO THE COURT

21) PLAINTIFF INCORPORATIES BY REFERENCE PARAGRAPH 1-20 AS AND FORE THIS PARAGRAPH 21.

22) PLAINTIFF HAS RELIED ON THE PROCESS OF ACCESSING THE CIRCUIT COURT AS KNOWN TO HIM AND HAS BEEN IGNORED) by THE CLERK'S OFFICE.

23) CERTIFIED MAIL RECEIPT PROVES THAT THE CLERK OF THE CIRCUIT COURT did RECEIVE THE PLAINTIFF'S 2-1401 PETITION. WITH THE TRACKING/ ARTICLE NUMBER OF 7016 0340 0000 6428 3931.

## CLAIM NUMBER THREE

VIOLATION OF CONSTITUTIONAL AND STATUTORY DUTIES - STATE ATTORNEY.

24) PLAINTIFF INCORPORATES BY REFERENCE PARAGRAPH 1-23 AS AND FORE THIS PARAGRAPH 24.

25) CERTIFIED MAIL RECEIPT TRACKING/ARTICLE NUMBER 7016 0340 0000 6429 3955 PROVES THAT THE STATES ATTORNEY OFFICE did RECEIVE THE PLAINTIFF'S 2-1401 ~~~~~~~ PETITION.

26) STATE'S ATTORNEY OFFICE Should hAVE RESPONDED TO THE 2-1401 PETITION.

27) STATE'S ATTORNEY OFFICE Should hAVE ACKNOWLEDGED RECEPTION OF THE 2-1401 PETITION AND OTHERWISE Should hAVE brought THIS MATTER TO THE CIRCUIT COURT CLERK'S OFFICE AND TO THE COURT ITSELF.

## CLAIM NUMBER FOUR
## CLAIM FOR PUNITIVE DAMAGES

28) PLAINTIFF INCORPORATES BY REFERENCE PARAGRAPH 1-27 AS IN THIS PARAGRAPH 28.

29) PUNITIVE DAMAGES ARE WARRANTED WHEREAS THE DEFENDANT'S CONDUCT. EITHER ALONE OR IN CONSPIRACY. BY NOT EVEN ACKNOWLEDGING THE RECEPTION OF PLAINTIFF'S DOCUMENT'S

There by Deweiding Access to The Court. Is shocking and outrageous conduct that need to be public punished To reflect the Gravity of past violations and to Deter future violations as a severe mistrust in the Litligtion process has been created.

## Conclusion

Wherefore the foregoing reason's Plaintiff, Maurice Coleman ask this Honorable court to award him damages as follows.

A) Conpensatory damages in the amount of $100,000.00

B) Punitive damages in the amount of $500,000.00

C) For all cost incurred in this lawsuit by Plaintiff.

RESPECTFULLY SUBMITTED BY:

MAURICE COLEMAN # A25160
P.O. BOX-112
JOLIET, ILL, 60434

Maurice Coleman # A25160
P.O. Box-112
Joliet, Ill, 60434

DATE OF: _____

**V.**     **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

DEFENDANT'S ARE VIOLATING MY 14th AMENDMENT OF THE 9US. CONSTITUTION
TO ACCESS TO THE COURTS BY OBSTRUCTION TO FULF MY 2-1401 RELIEF OF JUDG-
MENT FOR THE SECOND TIME AS MY APPENDIXS ESTABLISHES, AND NEED A
FEDERAL COURT ORDER TO HAVE THE DEFENDANT'S PLACE MY 2-1401 PETITION ON
THE JUDGE COURT DOCKET TO BE HEARD/ ANY OTHER DAMAGES AWARDS BY THE
COURT DO SO. POSITIVE/ COMPENSATORY.

**VI.**     The plaintiff demands that the case be tried by a jury.   ☑ YES     ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this __March__ day of __27__, 20 __19__

__Maurice Coleman__
(Signature of plaintiff or plaintiffs)

__MAURICE COLEMAN__
(Print name)

__A25160__
(I.D. Number)

(Address)

## II. PERJURY AND OBSTRUCTION OF JUSTICE FOR WANT OF JURISDICTION:

WHETHER THE STATE'S OFFICIALS KNOWINGLY AND WILLFULLY ENGAGED IN A CONDUCT THAT AFFECTED PENDING OF FORESEEABLE COURT'S PROCEEDINGS UNDER OBSTRUCTION OF JUSTICE STATUTE PRESCRIBING CORRUPTLY ALTERING THE DOCUMENTS AND CONCEALING THE RECORD WITH INTENT TO IMPAIR THEIR INTEGRITY OR AVAILABILITY FOR USE IN OFFICIAL COURT PROCEEDINGS? 18 U.S.C. § 1512 (c)(1).

### BACKGROUND

1. THE PETITIONER IS CURRENTLY SERVING NATURAL LIFE FOR MURDER OF TERRELL JACKSON ("TERRELL") AND A CONCURRENT TERM OF 30 YEARS FOR ARMED ROBBERY, [SEE PEOPLE V. COLEMAN, 179 ILL.APP. 3d 410, 534 N.E.2d 583 (1st Dist. 1989)].

2. ACCORDING TO THE POLICE REPORT, INCORPORATED HEREIN AND ATTACHED HERETO AS EXHIBIT ("EX.") A, TERRELL WAS MURDERED ON (SUNDAY) 2 AUGUST 1981 AT 1720 HRS.;

3. ALSO, THE EX. A REVEALS THAT DETECTIVE ("DET.") PATRICK CARROLL, # 5043, AND DET. STEVEN WARNER, # 12475, ARRIVED AT THE CRIME SCENE AT 6856 S. CALUMET, IN CHICAGO, AT 1750 HRS.;

4. AT THE CRIME SCENE DETECTIVES INTERVIEWED TWO EYE-WITNESSES, TERRELL'S BROTHER ARLANDER ("ARLANDER") ADAMSON, A.K.A "SWEET PEA," AND TERRELL'S STEP-DAUGHTER GWEN ("GWEN") THOMAS, AND THEY INTERVIEWED TERRELL'S WIFE

GENEVA ("GENEVA") JACKSON, WHO WAS NOT PRESENT AT THE TIME OF MURDER;

5. THE EX. A REFLECTS THAT ARLANDER RELATED TO DETECTIVES THAT GWEN TERREL AND HIMSELF WERE THE ONLY PEOPLE IN THE HOUSE, ALLEGING THAT HE WAS IN THE LIVINGROOM ON THE FIRST FLOOR WATCHING TELEVISION, TERREL WAS UPSTAIRS IN THE FRONT BEDROOM SLEEPING ON THE FLOOR, AND THAT GWEN WAS IN THE MIDDLE BEDROOM; ALSO, ARLANDER TOLD DETECTIVES THAT LITTLE AFTER 1700 HRS. TWO MEN CAME-IN FROM THE REAR OF THE HOUSE, POINTING GUNS AT HIM, AND HE TOOK THEM TO THE TERREL'S ROOM, AND THAT THERE THEY MURDERED TERRELL, AND THAT THE MEN WERE IN THE HOUSE ABOUT 15 MINUTES, AND THEY LEFT;

6. ALSO, THE EX. A REFLECTS THAT GWEN TOLD DETECTIVES THAT SHE WAS IN HER BED-ROOM, WATCHING TELEVISION, WHEN TWO MEN CAME-IN AND DRAGGED HER INTO TERREL'S ROOM, WHERE SHE SAW HIM PARTIALLY LAYING ON TOP OF ARLANDER, AND WAS BLEEDING; GWEN RELATED TO DETECTIVES THAT SHE OFFERED TO HELP THE MEN TO FIND THE MONEY BECAUSE OF HER FEAR THAT THEY WOULD SHOOT HER AND HER DAUGHTER;

7. FURTHER, THE EX. A REFLECTS THAT GENEVA INFORMED DETECTIVES THAT TERRELL MENTIONED TO HER THAT SOMEONE WAS COMING OVER ABOUT SOME AUTOMOBILE TIRES BUT DID NOT KNOW WHO OR WHEN THIS PERSON WAS SUPPOSE TO COME, AND THAT SHE LEFT THE HOUSE LITTLE BEFORE 1600 HRS.;

8. FURTHERMORE, THE EX. A REFLECTS THAT BOTH, GWEN AND ARLANDER, WERE BROUGHT INTO AREA TWO VIOLENT CRIME OFFICE AND THERE THEY VIEWED PHOTOS OF POSSIBLE SUSPECTS WITH NEGATIVE RESULTS.

9. The police report dated 3 August 1981, incorporated herein and attached hereto as EX. B, reveals that Det. Carroll with Det. John Van Brrschot, ~~# 0550, interviewed Roy Weaver ("Wright"), A.K.A "Dice";~~

> NOTE: It should be noted that the police report, EX. B, was never tendered to the defense with discovery material.

10. According to the EX. B, that the next day, Monday, after Terrell's murder, Wright told detectives that on Sunday afternoon, around noontime, he went over to the Terrell's house and was admitted by Arlander, and that at that time he had a conversation with Terrell about a narcotics deal. Wright stated that also at that time he saw Gwen and her baby;

11. The EX. B reflects that in regard to the abovementioned narcotics deal, Wright told detectives that a certain man, he knows only as Larry ("Larry") Jackson, (not related to Terrell), wanted to buy 5 ounces of Heroin from Terrell in amount of $5650.00 U.S.C.;

12. In that extent, the EX. B reveals that Wright informed detectives that at that time Terrell told him to check back with him around 1500 hrs., and that he left. Write also told detectives that he returned around 1500 hrs., and again was admitted to the house by Arlander, and that he spoke to Terrell again. Write related to detectives that at this time Terrell told him that he did not make a contact yet and to check back with him in a half-hour, and he left again;

4.

13. ALSO, THE _EX. B_ REVEALS THAT WRIGHT RETURNED BACK IN A HALF-HOUR AND WAS AGAIN ADMITTED INTO HOUSE BY ARLINDER, AND THAT AT THIS TIME ARLINDER WAS ~~WAITING TO TALK TO TERRELL AND WAS TOLD THAT WRIGHT CHECK BACK WITH HIM~~ AROUND 1700 HRS., AND WRIGHT LEFT;

14 FURTHER, THE _EX. B_ REFLECTS THAT WRIGHT TOLD DETECTIVES THAT WHEN HE LEFT THE TERRELL'S HOUSE HE CALLED LARRY AND TOLD HIM THAT HE THINKS THAT TERRELL DID NOT WANT TO DEAL WITH HIM, AND THEN LARRY TOLD HIM THAT HE CAN DEAL WITH SOMEONE ELSE, AND HUNG THE PHONE;

15 FURTHERMORE, THE _EX. B_ REFLECTS THAT DETECTIVES CONCLUDED THAT: "ACCORDING TO WRIGHT, HE WENT HOME AND FOUND ABOUT THE KILLING THE NEXT DAY." THE INTERVIEW WITH WRIGHT WAS THEN TERMINATED AND HE WAS LET GO FROM THE POLICE STATION.

16. THE POLICE REPORT DATED 18 AUGUST 1981, INCORPORATED HEREIN AND ATTACHED HERETO AS _EX. C_, REVEALS THAT DET. JAMES REDMOND, #11340, AND DET. JAMES O'LEARY, #11505, RE-INTERVIEWED WRIGHT AFTER HE WAS ADVISED OF HIS RIGHTS;

> NOTE: IT SHOULD BE NOTED THAT THE POLICE REPORT, _EX. C_, ALSO, WAS NOT SUBMITTED TO THE DEFENSE WITH DISCOVERY MATERIAL.

17. THE _EX. C_ REVEALS THAT:

> WANTED:   #2. COLEMAN, MAURICE, 14/N/27 YEARS, DOB: 1 MAY 54,

LAST KNOWN ADDRESS OF 6447 S. LANGLEY, CPD IR# 308110.

#1. UNKNOWN MALE NEGROE POSSIBLE NICKNAME OF J.J.

RE-INTERVIEWED: WRIGHT, ROY W. M/N/25 YEARS, DOB: 26 JAN 56 6727 S. EBERHART.

18. THIS POLICE REPORT, EX.C, ALSO REVEALS THAT WRIGHT WAS IN PROCESS OF SETTING UP A DRUG TRANSACTION BETWEEN TERRELL AND LARRY ON THIS DATE TERRELL WAS MURDERED. WRIGHT TOLD DETECTIVES THAT AT APPROXIMATELY 1515 HOURS HE WENT TO THE CLARK GAS STATION AT 505 E. 67th STREET WHERE HIS BROTHER STEVE WORKED AS A PUMP ATTENDANT. THERE HE ASKED STEVE TO ALLOW HIM TO USE HIS CAR TO TAKE HIS GIRLFRIEND AND HIS CHILDREN TO THE DRIVE-IN MOVIE;

19. FURTHER, THE EX.C REVEALS THAT WRIGHT TOLD DETECTIVES THAT BEFORE HE LEFT THE GAS STATION HE MET AN ACQUAINTANCE KNOWN TO HIM AS RIP, AND THAT RIP WAS IN COMPANY OF ANOTHER UNKNOWN MALE. ACCORDING TO WRIGHT, RIP ASKED FOR A RIDE TO 69th STREET, AND WRIGHT TOLD HIM THAT HE WAS GOING TO 69th AND CALUMET, AND HE DROVE THEM IN THAT DIRECTION; ON THE WAY, WRIGHT TOLD THEM THAT HE HAD TO SEE TERRELL IN ORDER TO CHECK ON THE PROGRESS OF THE DRUG TRANSACTION BETWEEN HIM AND TERRELL FOR LARRY. WHILE IN THE AUTO RIP REFERED TO THE OTHER GUY AS J.J.;

20. ACCORDING TO THE EX.C, WRIGHT WAS GIVEN A PHOTO-BOOK #287 AND POSITIVELY IDENTIFIED RIP, NOW KNOWN AS MAURICE COLEMAN. DETECTIVES THEN WENT

20. According to the EX. C, Wright parked the car at the corner of 69th and Calumet and Rip and J.J. walked west on 69th Street and he walked ~~east, and then into Terrell's house. Wright told detectives that at this~~ time Arlander went upstairs to tell Terrell that he was there, and minutes later Arlander told him that Terrell said to call back at 1700 hours. Then Wright told detectives that he returned back to the gas station and phoned Larry and explained to him that Terrell could not get the drugs or he did not want to deal with him and that they should call the deal off, and then ~~the~~ he went to pickup his girlfriend and they went to the drive-in;

21. The EX. C reflects that detectives gave to Wright a photo book #287, page #220, and Wright positively identified the person known to him as Rip, listed under IR #308110. According to detectives, they ~~the~~ went to the home of Gwen with the photo book #287, and after looking through several pages, she positively identified Maurice Coleman, listed under IR #308110;

22. Furthermore, EX. C reveals that ASA Kerstein responded upon request and interviewed Wright, and then asked that Arlander and Gwen be brought in for an interview. Detectives located and transported Gwen and Arlander to the area where they were interviewed by ASA Horan who then interviewed Wright briefly. According to detectives, both Gwen and Arlander related essentially the same facts as related during previously recorded interviews. ASA Horan advised that a warrant be secured to arrest Coleman for the offense of murder.

7.

23. The police report, incorporated herein and attached hereto as EX. D, reveals that at approximately 1440 hrs on 19 August 1981, Maurice Coleman was arrested by Det. Redmond and Det. O'Leary at 6436 S. Eberhart where he was advised of his rights, and then he was transported to the Area One Violent Crime, and a line-up was held; at that time Gwen viewed the line-up and positively identified Coleman, and then Arlander also viewed lineup and he too positively identified Coleman; after the line-up, ASA Moore advised that Coleman be charged with the offense of murder, and he was so charged.

24. ASA Kevin A. Moore made a report, incorporated herein and attached hereto as EX. E, stating that on August 19, 1981, at approximately 5:15 P.M., he was contacted by Det. Redmond regarding the arrest of Coleman for the fatal shooting of Terrell that occurred on August 2, 1981 at 5:20 P.M. at 6856 S. Colfax. Further, he stated that Det. Redmond provided him with the police reports concerning the matter, and after reviewing the reports, he contacted ASA Horan and ASA Kerstein;

25. Further, the EX. E reveals that ASA Moore interviewed Coleman and that Coleman negated any involvement in murder of Terrell.

26. The police report, incorporated herein and attached hereto as EX. F, indicates that a line-up was held on 19 August 1981 at 1730 hrs. where Gwen and Arlander positively identified Coleman as one of the persons who shot and robbed Terrell. David Wilkins who also viewed line-up did not make a positive identification at that time.

## SECTION 2-1401 PROVISIONS

SECTION 2-1401 ESTABLISHES A COMPREHENSIVE, STATUTORY PROCEDURE THAT ALLOWS FOR THE VACATUR OF A FINAL JUDGMENT OLDER THAN 30 DAYS. 735 ILCS 5/2-1401 (WEST 2015). SECTION 2-1401 REQUIRES THAT THE PETITION BE FILED IN THE SAME PROCEEDING IN WHICH THE ORDER OF JUDGMENT WAS ENTERED, BUT IT IS NOT A CONTINUATION OF THE ORIGINAL ACTION. 735 ILCS 5/2-1401 (b) (WEST 2015). PEOPLE v. VINCENT, 226 Ill. 2d 1, 7 (2007).

PRESENT SECTION 2-1401 PETITION IS FILED UNDER SUBSECTION (f), WHICH EXPLICITLY STATES:

"(f) Nothing contained in this Section affects any existing right to relief from a VOID ORDER OR JUDGMENT or to employ any existing method to procure that relief." 735 ILCS 5/2-1401 (f)(WEST 2015).

THE PURPOSE OF SECTION 2-1401 PETITION IS TO BRING BEFORE THE TRIAL COURT FACTS NOT APPEARING IN THE RECORD, WHICH, IF KNOWN TO THE COURT AND PETITIONER WHEN THE JUDGMENT WAS ENTERED, WOULD HAVE PRECLUDED ITS ENTRY. PEOPLE v. LAWTON, 335 Ill. App. 3d 1085, 1087 (4th Dist. 2002).

RELIEF FROM JUDGMENT IS PREDICATED UPON PROOF, BY A PREPONDERANCE OF EVIDENCE, OF A DEFENSE OR A CLAIM THAT WOULD HAVE PRECLUDED ENTRY OF THE JUDGMENT IN THE ORIGINAL ACTION AND DILIGENCE IN BOTH DISCOVERING THE DEFENSE OR CLAIM AND PRESENTING THE PETITION. 735 ILCS 5/2-1401 (f)(WEST 2015). PEOPLE v. MERAN, 2012 IL App (1st) 111165, ¶12; OUR SUPREME COURT HAS "CONSISTENTLY HELD THAT A JUDGMENT IS VOID IF AND ONLY IF THE COURT THAT ENTERED IT LACKED JURISDIC-

TION." *MORAN*, IL APP 111165 AT ¶15. ("[I]F A COURT LACKS EITHER SUBJECT MATTER JURIS-DICTION OVER THE MATTER OR PERSONAL JURISDICTION OVER THE PARTIES, ANY ORDER ENTERED ~~IN THE MATTER IS VOID AB INITIO, AND, THUS, MAY BE ATTACKED AT ANY TIME.~~") *PEOPLE V. WUEDBERS*, 396 ILL. APP. 3d 763 766 (2009).

IN *DAVIS*, OUR SUPREME COURT MADE IT CLEAR THAT THE TERM "<u>VOID</u>" SHOULD BE RESERVED ONLY FOR THOSE JUDGMENTS RENDERED BY A COURT THAT LACKED JURISDICTION. <u>PEOPLE V. DAVIS</u>, 156 ILL. 2d 149, 155 (1993). AS THE COURT EXPLAINED:

"WHETHER A JUDGMENT IS VOID OR VOIDABLE PRESENTS A QUESTION OF JURISDICTION. [CITATION.] JURISDICTION IS A FUNDAMENTAL PRE-REQUISITE TO A VALID PROSECUTION AND CONVICTION. WHERE JURI-SDICTION IS LACKING, ANY RESULTING JUDGMENT RENDERED IS VOID AND MAY BE ATTACKED EITHER DIRECTLY OR INDIRECTLY AT ANY TIME. [CITATION.] BY CONTRAST, A VOIDABLE JUDGMENT IS ONE ENTERED ERRONEOUSLY BY A COURT HAVING JURISDICTION AND IS NOT SUB-JECT TO COLLATERAL ATTACK." <u>DAVIS</u>, 156 ILL. 2d AT 155-56.

MOREOVER, *DAVIS* EMPHASIZED THAT:

"ONCE A COURT HAS ACQUIRED JURISDICTION, NO SUBSEQUENT ERROR OR IRREGULARITY WILL OUST JURISDICTION THUS ACQUIRED. ACCORDIN-GLY, A COURT MAY NOT LOSE JURISDICTION BECAUSE IT MAKES A MISTAKE IN DETERMINING EITHER THE FACTS, THE LAW OR BOTH." <u>DAVIS</u>, 156 ILL. 2d AT 156.

APPLYING THE AFOREMENTIONED PRINCIPLES TO THE FACTS STATED ABOVE, THIS COURT IS COMPELLED TO CONCLUDE THAT <u>JUDGMENT ENTERED HERE IS VOID</u>.

## ANALYSIS

Petitioner was found guilty by the trial jury on two offenses—first degree murder and armed robbery. The ultimate question presented to the Court is whether the charges against Petitioner were so totally devoid of evidentiary support as to render his conviction unconstitutional under Due Process Clause of the Fourteenth Amendment. Decision of this question turns not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all.

Although prosecutorial discretion is broad, it is not unlimited, and courts have responsibility to protect individuals from prosecutorial conduct that is based on an unconstitutional motive or carried out in a bad faith. U.S. v. Smith, 231 F.3d 800, 807 (11th Cir. 2000).

In criminal cases the prosecution is required to disclose evidence that is favorable to the accused and material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady places an affirmative obligation on prosecutors "to learn of any favorable evidence known to the others acting on the government's behalf in the case," and requires disclosure by the prosecution not only of information actually known to the prosecutor, but of all information in the possession of the prosecutor's office, the police, and the others acting on behalf of the prosecution. Kyles v. Whitley, 514 U.S. 419, 438 (1995).

In determining a materiality in this case, the Court should consider the cumulative effect of the evidence concealed from the defense, and whether such concealment constitutes a denial of Due Process.

## I. THE CIRCUIT COURT'S LACK OF PERSONAL JURISDICTION

AN ANALYSIS OF PERSONAL JURISDICTION HAS TWO COMPONENTS: FIRST, THERE MUST BE A STATUTE THAT GIVES THE COURT POWER TO EXERCISE ITS JURISDICTION; AND SECOND, THE EXERCISE OF JURISDICTION MUST MEET DUE PROCESS STANDARDS. U.S.C.A. Const. Am. 14 National Union Fire Ins. Co. of Pittsburgh v. Arrowhawk Aviation, Inc., 259 F. Supp. 2d 1096 (2003).

DISTRICT COURT HAS BROAD DISCRETION IN FORMULATING ITS CHARGE AS LONG AS THAT CHARGE ACCURATELY REFLECTS THE LAW AND FACTS. U.S. v. Starrett, 55 F. 3d 1525 (11th Cir. 1995). THE KEY PHRASE HERE IS "THAT CHARGE **ACCURATELY** REFLECTS THE LAW AND FACTS."

QUESTION TO THE COURT IS WHETHER MISREPRESENTATIONS BY THE STATE'S REPRESENTATIVES AMOUNTED TO A SUCCESSFUL EFFORT OF FRAUD AND WILLFUL INTENT TO TAINT THE IDENTIFICATION LINE-UP PROCESS FOR WANT OF JURISDICTION?

IN THE PRESENT CASE THE RECORD ["THE TRIAL RECORD" ("T.R.")] AND EVIDENCE SPEAKS FOR IT SELF. IN THE COURSE OF CRIMINAL PROSECUTION, THE PROSECUTOR IS IN CHARGE WITH KNOWLEDGE OF INFORMATION POSSESSED BY OTHER AGENTS THAT ARE PART OF THE "PROSECUTION TEAM", AND CONTROLS WHICH EVIDENCE IS INTRODUCED TO THE TRIAL COURT. IN THAT CIRCUMSTANCE, THE PROSECUTOR HAS BEEN REQUIRED ONLY TO PRODUCE EVIDENCE THAT HE OR SHE "CONSTRUCTIVELY POSSESSES", THAT IS, EVIDENCE THAT THE PROSECUTOR KNEW OR SHOULD HAVE KNOWN EXISTED. U.S. v. Joseph, 996 F. 2d 36, 39-41 (3d Cir. 1993).

UNDER DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT A DETERMI-NATION THAT PROBABLE CAUSE EXISTS TO PROSECUTE A PERSON MUST BE FOUND

BEFORE THE COURT'S PROCEEDINGS ARE INSTITUTED AGAINST HIM. U.S.C.A. CONST. AM. 14. *RHODES v. MABUS*, 676 F. SUPP. 755 ( — ).

IN THE PRESENT CASE, THE LINE-UP IDENTIFICATION WAS MATERIAL TO PERSONAL JURISDICTION UNDER DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. *AEROHAWK AVIATION*, 259 F. SUPP. 2d AT 1107; SEE ALSO *MABUS*, SUPRA.

ALSO, THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT PROHIBITS *IDENTIFICATION TESTIMONY* THAT DERIVES FROM IMPERMISSIBLY SUGGESTIVE PROCEDURES THAT LEAD TO AN IRREPARABLY MISTAKEN IDENTIFICATION. SEE *STOVALL v. DENNO*, 388 U.S. 293, 302 (1967).

COLEMAN'S ATTORNEY FILED A PRE-TRIAL MOTION TO SUPPRESS LINEUP IDENTIFICATION THAT IT WAS SUGGESTIVE. HE ARGUED EXCLUSIVELY THAT THE LINEUP WAS SUGGESTIVE AND CONCLUDED:

"I WOULD ASK THE COURT TO SUPPRESS (THAT) LINEUP IDENTIFICATION AND DENY THE IN-COURT IDENTIFICATION BASED ON THAT LINEUP SINCE IT IS SO SUGGESTIVE THAT IT OVERWHELMINGLY PREJUDICED THE DEFENDANT [COLEMAN]." *PEOPLE v. COLEMAN*, 128 ILL. DEC. 401, 413 (1989)

PETITIONER'S TRIAL ATTORNEY, GARY W. KULL, NEVER HAD AN OPPORTUNITY TO EXAMINE SUPPRESSED POLICE REPORTS AND OTHER EVIDENCE RELEVANT TO THIS CASE, SIMPLY BECAUSE THEY WERE KNOWINGLY AND WILLFULLY CONCEALED BY THE PROSECUTION'S TEAM, AND WERE UNKNOWN TO HIM AT TRIAL PROCEEDINGS.

THE POLICE REPORT, INTRODUCED HERETO AS *EX. A*, REFLECTS THAT IT WAS KNOWINGLY AND INTENTIONALLY ALTERED FOR THE PURPOSE TO DEFRAUD, WHILE THE POLICE REPORTS, INTRODUCED HERETO AS *EX. B* AND *EX. C*, REVEAL THAT

THESE REPORTS WERE KNOWINGLY AND WILLFULLY WITHHELD BY THE POLICE AND PROSECUTORS FOR THE PURPOSE TO MAKE SUCH SUCCESSIVE LINEUP IDENTIFICATION POSSIBLE.

THE POLICE REPORT, DATED 2 AUGUST 1981, EX. A, REVEALS THAT GENEVA LEFT THE HOUSE LITTLE BEFORE 1600 HOURS, AND THAT TERRELL, ARLANDER, AND GWEN WITH HER BABY WERE THE ONLY PEOPLE IN THE HOUSE BEFORE TERRELL WAS MURDERED. TERRELL WAS MURDERED ONLY AFTER GENEVA LEFT THE HOUSE. THE INFORMATION THAT WRIGHT WAS COMING IN AND OUT OF THE HOUSE AT THE TIME GENEVA WAS PRESENT THERE, HAS BEEN PURPOSLY EXCLUDED FROM THE REPORT.

THE POLICE REPORT, DATED 3 AUGUST 1981, EX. B, WHICH HAS BEEN SUCCESSFULLY CONCEALED FROM THE DEFENSE AND WITHHELD FROM DISCOVERY MATERIAL, REVEALS THAT THE POLICE INTERVIEWED WRIGHT AT THE POLICE STATION WHERE HE, LITERALLY, CONFESSED TO EVERYTHING EXCEPT PULLING THE TRIGGER.

WRIGHT ADMITTED TO DET. CARROLL AND DET. VANBERSCHOT THAT HE WAS A MIDDLE-MAN IN A NARCOTICS DEAL BETWEEN LARRY AND TERRELL. WRIGHT ALSO GAVE THEM EXACT AMOUNT OF MONEY, $5,650.00 DOLLARS, GIVEN TO HIM BY LARRY IN EXCHANGE FOR 5 OUNCES OF HEROIN THAT HE SUPPOSE TO PICKUP FROM TERRELL. ACCORDING TO THE EX. B, WRIGHT TOLD DETECTIVES THAT ON THAT SUNDAY AFTERNOON (AUGUST 2, 1981), AROUND NOONTIME, HE WENT OVER TO THE TERRELL'S HOUSE AND WAS ADMITTED BY ARLANDER, AND THAT AT THAT TIME HE SAW GWEN AND HER BABY. GENEVA WAS THERE, AND HE WAS TOLD TO COME BACK AT 1500 HOURS. HE

14.

RETURNED BACK AT 1500 HOURS ONLY TO FIND OUT THAT GENEVA WAS STILL THERE, AND HE WAS TOLD BY ARLANDER TO COME BACK IN A HALF-HOUR. WRIGHT RETURNED BACK IN A ~~HALF-HOUR, AND GENEVA WAS STILL THERE. HE WAS TOLD BY ARLANDER TO COME BACK AT~~ 1700 HOURS, AND HE LEFT. GENEVA LEFT THE HOUSE LITTLE BEFORE 1600 HOURS (SEE EX. A), ACCORDING TO ARLANDER, TWO GUYS CAME LITTLE AFTER 1700 HOURS AND SPENT THERE ABOUT 15 MINUTES (SEE EX. A), AND SOMETIMES IN THOSE 15 MINUTES TERRELL WAS MURDERED.

ACCORDING TO THE POLICE REPORT, EX. B, WRIGHT WAS LET GO FROM THE POLICE STATION AFTER THE INTERVIEW WAS TERMINATED, THEREFOREAFTER, LARRY WAS NEVER INVESTIGATED FOR THE ALLEGED NARCOTICS DEAL WITH TERRELL. BY WITHHOLDING SUCH IMPORTANT MATERIAL INFORMATION FROM THE DEFENSE, NEITHER THE PROSECUTOR NOR THE POLICE HAD TO EXPLAINED WHAT HAD HAPPENED TO $5,650.00 DOLLARS OR 5 OUNCES OF HEROIN OR WHY LARRY WAS NEVER INVESTIGATED OR WHY WRIGHT WAS LET GO FREE. THE QUESTION OF WHETHER THE DETECTIVES HAD HAD CONFISCATED DRUGS AND MONEY AS EVIDENCE, OR WHETHER DETECTIVES TOOK THE MONEY AND LET WRIGHT GO TO SELL THE DRUGS AND BRING BACK CASH MONEY, OR THEY WERE SYMPATHETIC TO WRIGHT AND LARRY THAT THE INVESTIGATION WAS COMPLETELY TERMINATED, THE ANSWER TO THAT IS UNKNOWN SIMPLY BECAUSE SUCH INFORMATION WAS KNOWINGLY AND DE-LIBERATELY CONCEALED BY THE POLICE AND PROSECUTORS TO MISLEAD THE COURT.

ACCORDING TO THE POLICE REPORT, EX. C, WHICH WAS ALSO CONCEALED FROM THE COURT, WRIGHT WAS RE-INTERVIEWED TWO WEEKS LATER, AND RATHER PULLED OUT THE PHOTO OF COLEMAN — THE PERSON THAT HE KNEW AS "RIP," AND THAT PHOTO WAS LATER SHOWN TO ARLANDER AND GWEN. ONLY THEN ARLANDER AND GWEN MADE A "POSITIVE IDENTIFICATION" OF COLEMAN. AFTER THE ARREST, WRIGHT WAS PRESENT FOR A LINEUP IDENTIFICATION TO MAKE SURE THAT ARLANDER AND GWEN PICK COLEMAN, AND HE WAS POSITIVELY IDENTIFIED AGAIN. FOR WRIGHT'S ACCUSATION AND ARLANDER'S AND GWEN'S SUGGESTIVE IDENTIFICATION, COLEMAN WAS CHARGED WITH MURDER OF TERRELL.

The record, TR. 1319-20 and 1617-20, reveals that both ASA Kristein and ASA Horan made their own reports from their interviews conducted with Arlander, Gwen and Wright, and that both had a knowledge of the money and drugs deal between Larry and Terrell through Wright. Det. O'Leary testified that he was originally assigned on August 2, 1981, and both him and Det. Redmond interviewed Wright, and that on August 18, they re-interviewed him when he told them about Rip and showed them the photo of the petitioner.

Decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced. See U.S. Const. Art. II, §3. Judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function or interpreting and applying the Constitution. U.S. v. Smith, 231 F.3d 800, 807 (2000). The prosecutors are given broad discretion in deciding against whom to focus limited prosecutorial sources, and a strong, "presumption of regularity supports ... [those] decisions." United States v. Armstrong, 517 U.S. 456 (1996).

From the Ex.C, it is evident that the petitioner was charged and prosecuted for no other reason but his race, being labeled as "Nigger." The prosecutors must exercise their charging discretion within constitutional constraints, including those "imposed by the equal protection component of Due Process Clause of the Fifth Amendment." See Id.

16.

Under that clause, "the decision whether to prosecute may not be based on unjustifiable standard such as race, religion, or other arbitrary classification." Id. "A selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutors have brought the charge for reasons forbidden by the Constitution." Id. at 463.

No principle of procedural due process is more clearly established than that notice of the specific charge and a chance to be heard by the court on the issues raised by that charge, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. U.S.C.A. Const. Am. 14. In re Oliver, 333 U.S. 257 (— ).

In Steinbrecher, our Supreme Court rejected the notion that a court of general jurisdiction, which derives its jurisdiction from the Constitution, may proceed in derogation of statutory authority. "It is by reason of our Constitution that our circuit courts acquire power to adjudge * * *." However, "it is by reason of the statute that the justiciable matter exists," and the circuit court must proceed within the structures of the statute. Steinbrecher v. Steinbrecher, 197 Ill.2d 514, 529 (2001).

Due Process Clauses of the Fourteenth Amendments do not tolerate knowingly use of false evidence and perjured testimony to sustain the court's jurisdiction. See Aerohawk Aviation, supra, which specifically requires that "the exercise of jurisdiction must meet Due Process standards" with accurate presentation of law and facts.

17.

## II. PERJURY AND OBSTRUCTION OF JUSTICE FOR WANT OF JURISDICTION

A STATE'S OFFICIAL WHO UNDERMINES DUE PROCESS CLAUSE OF THE FOUR-TEENTH AMENDMENT TO A PERSON'S RIGHT TO A PROMPT JUDICIAL DETERMINATION OF PROBABLE CAUSE BY MALICIOUSLY GIVING FALSE TESTIMONY TO A JUDICIAL BODY CHARGED WITH MAKING PROBABLE CAUSE DETERMINATION CAN BE HELD LIABLE IN § 1983 CAUSE OF ACTION FOR MALICIOUS PROSECUTION. U.S.C.A. CONST. AM. 14; 42 U.S.C.A. § 1983. RHODES v. MABUS, 676 F. SUPP. 755 (——).

WHETHER THE STATE'S OFFICIALS KNOWINGLY AND WILLINGLY ENGAGED IN A CONDUCT THAT AFFECTED PENDING OF FORESEEABLE COURT'S PROCEEDINGS UNDER THE OBSTRUCTION OF JUSTICE STATUTE PRESCRIBING CORRUPTLY ALTERING THE DOCUMENTS AND CONCEALING THE RECORD WITH INTENT TO IMPAIR THEIR INTEGRITY AND/OR AVAILABILITY FOR USE IN OFFICIAL COURT PROCEEDINGS. 18 U.S.C. § 1512 (C) (1).

IN THE PRESENT CASE, THE SUPPRESSION OF THE POLICE REPORTS AND EVIDENCE PRESERVED ON THE RECORD WAS SUFFICIENT TO SUPPORT THE PETITIONER'S CLAIM THAT THE POLICE AND PROSECUTORS ACTED IN A COMMON SCHEME TO "RAILROAD" COLETON FOR MURDER OF TERRELL IN VIOLATION OF HIS DUE PROCESS RIGHTS; BASIS FOR HIS ARREST ON BOGUS IDENTIFICATION MADE BY WRIGHT, AND LATER, DURING SUGGESTIVE LINEUP IDENTIFICATION BY ALEXANDER AND GWIN.

PERJURY AND OBSTRUCTION OF JUSTICE ARE OFFENSES AGAINST THE INTEGRITY OF THE JUDICIAL SYSTEM ——. UNITED STATES v. DUNNIGAN, 507 U.S. 87, 97 (1993). A JUDICIAL PROCEEDING IS DESIGNED IN PART TO DETERMINE THE TRUTH OF WHAT HAD OCCURRED IN PROCESS OF IDENTIFICATION, AND IF THAT IS ACCEPTABLE THAT ANY SUCH WITNESS CAN FALSLY TESTIFY, IT WOULD TOTALLY UNDERMINE THE CRUCIAL MEDIATING ROLE OF THE COURTS. PERJURY STATUTE, 18 U.S.C. SECTION 1512 (C), EXPLICITLY STATES:

WHOEVER CORRUPTLY——

(1) ALTERS, DESTROYS, MUTILATES, OR CONCEALS A RECORD, ~~DOCUMENT, OR OTHER OBJECT, OR ATTEMPTS TO DO SO, WITH THE~~ INTENT TO IMPAIR THE OBJECT'S INTEGRITY OR AVAILABILITY FOR USE IN AN OFFICIAL PROCEEDING; OR

(2) OTHERWISE OBSTRUCTS, INFLUENCES, OR IMPEDES ANY OFFICIAL PROCEEDING, OR ATTEMPTS TO DO SO,

SHALL BE FINED UNDER THIS TITLE OR IMPRISONED NOT MORE THAN 20 YEARS, OR BOTH. 18 U.S.C. § 1512 (C)(1) AND (E).

THE POLICE REPORTS, EX. B AND EX. C ABOVE, WERE MATERIAL TO COLEMAN'S DEFENSE, AND IF THEY WERE PROPERLY DISCLOSED WITH DISCOVERY MATERIAL, HE WOULD HAVE A GOOD OPPORTUNITY TO HAVE CHARGES AGAINST HIM DISMISSED. ("A WIT-NESS TESTIFYING UNDER OATH OR AFFIRMATION VIOLATES [§1621 (1)] IF SHE GIVES A FALSE TESTIMONY CONCERNING A MATERIAL MATTER WITH THE WILLFUL INTENT TO PROVIDE FALSE TESTIMONY...)." A FALSE STATEMENT IS MATERIAL IF IT HAS "A NA-TURAL TENDENCY TO INFLUENCE, OR [IS] CAPABLE OF INFLUENCING, THE DECISION OF THE DECISIONMAKING BODY TO WHICH IT WAS ADDRESSED." NEDER V. UNITED STATES, 527 U.S. 1, 16 (1999).

THE QUESTION OF WHETHER CHICAGO POLICE DEPARTMENT HAD A POLICY OR PRACTICE TO MAKE CRIMINAL ALLEGATIONS AGAINST WHOMEVER THEY DISLIKE IS CORE COMPONENT OF THIS CASE. IN COVERING UP WRIGHT'S DIRECT INVOLVEMENT IN THE TERRELL'S MURDER, THE POLICE AND PROSECUTORS, FOR A MISERABLE GAIN OF $5,650.00 DOLLARS, 5 OUNCES OF HEROIN, AND WHATEVER JEWELRY THEY WERE TALKING ABOUT, THEY HAVE UTTERLY DESTROYED INNOCENT PERSON'S LIFE.

19.

## CONCLUSION

NOTICE TO THE COURT : IF THE FACTUAL STATEMENTS ADDRESSED IN EX. A, EX B, OR EX C

ARE CONTRADICTED THE EVIDENTIARY HEARING IS REQUESTED.

WHEREFORE, THE PETITIONER, MAURICE COLEMAN, PRAYS THIS HONORABLE COURT GRANT

HIM AN EVIDENTIARY HEARING UPON ISSUES OF SUGGESTIVE LINEUP IDENTIFICATION

UPON WHICH THE CIRCUIT COURT ACQUIRED ITS PERSONAL JURISDICTION IN VIOLATION

OF CONSTITUTION, OR IN ALTERNATIVE DISMISS THE CRIMINAL CHARGES AGAINST HIM

FOR LACK OF JURISDICTION.

RESPECTFULLY SUBMITTED BY

*Maurice Coleman*
/S/ PETITIONER, MAURICE COLEMAN.

### VERIFICATION BY CERTIFICATION

I, MAURICE COLEMAN, THE UNDERSIGNED, CERTIFY AND STATE THAT I AM THE PETITIONER,
PRO SE IN THE ABOVE CAPTIONED LEGAL MATTER; THAT I HAVE READ FOREGOING APPLICA-
TION AND HAVE KNOWLEDGE OF ITS CONTENTS; AND UNDER PENALTIES AS PROVIDED BY LAW
PURSUANT TO SECTION 1-109 OF THE CODE OF CIVIL PROCEDURE, I FURTHER CERTIFIED THAT
THE STATEMENTS SET FORTH IN THIS INSTRUMENT ARE TRUE AND CORRECT, EXCEPT AS TO THE
MATTERS THEREIN STATED TO BE ON INFORMATION AND BELIEF, AND AS TO SUCH MATTERS
THE UNDERSIGNED CERTIFIES AND STATES THAT HE VERILY BELIEVES THE SAME TO BE TRUE.

*Maurice Coleman*
/S/ PETITIONER, MAURICE COLEMAN.

SUBSCRIBED AND SWORN TO BEFORE ME ON

THIS 24th DAY OF March 2017.

*David Mansfield*
NOTARY PUBLIC

"OFFICIAL SEAL"
DAVID MANSFIELD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/26/2018

20.

STATE OF ILLINOIS }
COUNTY OF COOK } S.S.

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
~~COUNTY DEPARTMENT, CRIMINAL DIVISION~~

PEOPLE OF THE STATE OF ILLINOIS,
          RESPONDENT,

    VS.

MAURICE COLEMAN,
         PETITIONER.

CASE No.: 81 I 6930

BEFORE JUDGE:
HONORABLE _____

## PETITION FOR RELIEF FROM VOID JUDGMENT
## PURSUANT TO SECTION 2-1401 (f)

THE PETITIONER ("THE PETITIONER") MAURICE COLEMAN, PRO SE, PETITIONS THE COURT FOR __RELIEF FROM VOID JUDGMENT__ PURSUANT TO SECTION 2-1401(f), [735 ILCS 5/2-1401 (f) ET SEQ. (WEST 2015)], FOR THE CIRCUIT COURT'S LACK OF JURISDICTION, AND HEREBY ASKS FOR __EVIDENTIARY HEARING__ FOR FOLLOWING REASONS:

### ISSUES PRESENTED FOR REVIEW

I. __THE CIRCUIT COURT'S LACK OF PERSONAL JURISDICTION OVER THE PARTIES:__

WHETHER THE CIRCUIT COURT OF COOK COUNTY LACKED PERSONAL JURISDICTION OVER THE PARTIES WHERE THE STATE'S OFFICIALS KNOWINGLY TAINTED THE IDENTIFICATION LINE-UP PROCEEDING TO DEFRAUD THE COURT FOR WANT OF PERSONAL JURISDICTION IN VIOLATION OF DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT? U.S.C.A. CONST. AMEND. 14.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
THE COURT FOR THE FIRST MUNICIPAL CIRCUIT
LAW DIVISION

MAURICE COLEMAN,

           PLAINTIFF,

    V.

JOSEPH KAZMIERSKI, CHIEF JUDGE,

          DEFENDANT #1,

DOROTHY BROWN, COURT CLERK,

          DEFENDANT #2.

CASE. No.: 81-I6930

BEFORE JUDGE:

HONORABLE _____

          BADGE No. _____

## PETITION OF MANDAMUS

NOW COMES PLAINTIFF, MAURICE COLEMAN, PRO SE, IN ORDER TO GIVE NOTICE TO THE COURT FOR LEAVE TO FILE A PETITION OF MANDAMUS PURSUANT TO 735 ILCS 5/14-101 ET SEQ. DIRECTED TO THE ABOVE NAMED DEFENDANTS, AND IN SUPPORT THEREOF HE STATES AS FOLLOWS:

1. PLAINTIFF IS CURRENTLY INCARCERATED AT STATEVILLE CORR. CENTER, JOLIET, IL, WILL COUNTY, SERVING A SENTENCE OF NATURAL LIFE FOR THE CHARGE OF MURDER, No. 81 I 6930.

2. DEFENDANT #1, HONORABLE JOSEPH KAZMIERSKI, IS THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY - CRIMINAL DIVISION, AT 2650 SOUTH CALIFORNIA AVE, IN CHICAGO; AND AS SUCH IS RESPONSIBLE FOR APPOINTMENT OF A JUDGE TO PRESIDE OVER PLAINTIFF'S NEW CAUSE OF ACTION RAISED IN HIS SECTION 2-1401 PETITION, A COPY WHICH IS RECEIVED BY THE DEFENDANT #2, DOROTHY BROWN, THE CLERK OF THE CIRCUIT COURT OF COOK COUNTY - CRIMINAL DIVISION, AT 2650 SOUTH CALIFORNIA AVE, IN CHICAGO, ON APRIL 18, 2017, AND A COPY WHICH IS RECEIVED BY THE COOK COUNTY STATE'S ATTORNEY, HONORABLE KIMBERLY FOXX, ON APRIL 24, 2017.

3. DEFENDANT #2 IS RESPONSIBLE FOR FILING OF THE COURT DOCUMENTS AND PROMPTLY SUBMIT THE SAME TO THE JUDGE ASSIGNED TO THE CASE, OR TO DEFENDANT #1 IF NO JUDGE IS ASSIGNED.

4. PLAINTIFF HAS REQUESTED THAT THE DEFENDANTS PERFORM SPECIFIC MINISTERIAL DUTIES. THE

5. ROY WRIGHT, JR. WAS LET GO FROM THE POLICE STATION ON AUGUST 3RD OF 1981; THERE IS NO INDICATION OF ANY POLICE INVESTIGATION OF LARRY JACKSON, AND THE MONEY OF $5650 DOLLARS AND 5 OUNCES OF HEROIN WERE NEVER RECOVERED OR MENTIONED AGAIN AS A MATTER OF RECORD IN OPEN COURT.

6. I HAVE NO KNOWLEDGE OF WHO TERRELL JACKSON IS OR WHAT SHADY BUSINESS HAD OCCURRED IN EXCHANGE OF MONEY AND DRUGS BETWEEN HIM AND LARRY JACKSON THROUGH THEIR MIDDLE-MAN ROY WRIGHT, JR..

7. I AM TOTALLY, A HUNDRED PERCENT, INNOCENT TO THE MURDER OF TERRELL JACKSON AND ALL OTHER CHARGES SET AGAINST ME.

FURTHER AFFIANT SAYETH NOT.

By Maurice Coleman
/S/ AFFIANT, MAURICE COLEMAN
REG. NO. A25160
P.O. BOX 112
JOLIET, IL 60434

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 24TH DAY OF March , 2017.

David Mansfield
NOTARY PUBLIC

"OFFICIAL SEAL"
DAVID MANSFIELD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/26/2018

2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,

           RESPONDENT,

    VS.

MORICE COLEMAN

        PETITIONER.

CASE NO. : 81 I 6930

BEFORE JUDGE:
HONORABLE JAMES M. SCHRIER.

## MOTION FOR DEFAULT JUDGMENT

TO: THE CIRCUIT COURT OF COOK COUNTY — SECTION 2-1401 PROCEEDINGS:

Now comes the Petitioner ("THE PETITIONER"), Maurice Coleman, and moves the Court for additional relief against the People of the State of Illinois being in default pursuant to Supreme Court Rule 105(b)(2), and further he states:

1. Pursuant to Supreme Court Rule 104(b), the Petitioner has placed by certified mail: 1) Motion for leave to file Section 2-1401 Petition; 2) Petition for relief from void judgment pursuant to Section 2-1401(f); and 3) Affidavit of Maurice Coleman in support of Section 2-1401 Petition, addressed to the Clerk of the Circuit Court of Cook County, 2650 S. California Avenue, Chicago, IL 60608, and to the Cook County State's Attorney, Hon. Kim Foxx, 300 Daley Center, Chicago, IL 60602.

2. The Clerk of the Circuit Court of Cook County returned receipt acknowledging receiving attached documents on April 18, 2017, and the Cook County State's Attorney returned receipt acknowledging receiving those documents on April 27, 2017, see EXHIBIT A, attached hereto

3. The State did not respond to the pleadings addressed in the Petitioner's Section 2-1401 Petition, and he is entitled for the requested relief by default.

WHEREFORE, the Petitioner prays this Honorable Court grants this Motion and enters a judgment in his favor by law.

Maurice Coleman
/s/ PETITIONER, MAURICE COLEMAN

TO: CLERK OF THE CIRCUIT COURT
COOK COUNTY, CRIMINAL DIVISION
2650 SOUTH CALIFORNIA AVE., R. 305
CHICAGO, ILLINOIS 60608

DATE: October , 2017.

EXHIBIT 2

DEAR CLERK OF THE COURT,

PLEASE FIND ENCLOSED MY COPY OF PREPAID CERTIFIED MAIL AND PROOF OF SERVICES AS WELL NOTICE OF FILING OF MY SECTION 2-1401 PETITION, WHICH WAS RECEIVED BY YOUR OFFICE ON APRIL 18, 2017, (SEE A COPY ATTACHED HERETO). EVEN THOUGH I'VE SENT THREE SETS OF DOCUMENTS: ONE FOR COURT, ONE FOR STATE, AND ONE STAMPED FILED COPY BACK TO ME FOR MY RECORDS, I'VE NEVER RECEIVED EITHER STAMPED FILED COPY BACK OR ANY EXPLANATION WHEN IT WAS FILED IF IT WAS FILED OR WHY IT WAS NOT FILED IF IT WAS NOT FILED. PLEASE MAKE NOTE OF IT.

IT SEEMS THAT THE COURT IS UNAWARE OF MY SECTION 2-1401 PETITION FILING, SO, PLEASE FIND ENCLOSED MY MOTION FOR DEFAULT JUDGMENT AND TWO COPIES ATTACHED TO IT FOR FILING. ONE COPY SHALL BE SERVED TO THE STATE AND ONE STAMPED FILED COPY SHOULD BE MAILED BACK TO ME FOR MY PERSONAL RECORD.

FURTHERMORE, HERE ENCLOSED ARE TWO SEPARATE SETS OF INTERROGATORIES THAT INVOLVE TWO SEPARATE SERVICES TO EACH NAMED PERSON BESIDE COPIES PROVIDED FOR THE COURT, THE STATE, AND A COPY OF EACH THAT IS STAMPED FILED BACK TO ME FOR MY PERSONAL RECORD.

THIS LETTER IS ALSO A PART OF MY CERTIFIED MAIL IN REGARD TO FILING OF ALL ENCLOSED DOCUMENTS AS WELL ALL REQUESTED COPIES PREVIOUSLY FILED IN REGARD TO MY SECTION 2-1401 PETITION PROCEEDINGS, AND, IF YOU ARE UNABLE TO LOCATE MY ORIGINALLY FILED SECTION 2-1401 PETITION, PLEASE, FEEL FREE TO INFORM ME OF ITS STATUS THAT I MAY REFILE IT IF IT IS DEEMED TO BE NECESSARY.

THANK YOU FOR YOUR PROMPT HELP AND SUPPORT IN RESOLVING THIS MATTER.

SINCERELY,

/S/ MAURICE COLEMAN

MAURICE COLEMAN
IDOC REG. NO. A 25160
P.O. BOX 112
JOLIET, ILLINOIS 60434



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CAROLYN TAFT GROSBOLL
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

September 25, 2018

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Maurice Coleman
Reg. No. A-25160
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434-0112

In re:    Coleman v. Kazmierski
          M.D.014099

Today the following order was entered in the captioned case:

The motion by petitioner for leave to file a petition for an original writ of mandamus is <u>denied without prejudice</u> to refile the 2-1401 petition in the circuit court.

Order entered by the Court.

Very truly yours,

*Carolyn Taft Grosboll*

Clerk of the Supreme Court

cc:    Circuit Court of Cook County
       Cook County State's Attorney, Criminal Division
       Paul Anthony Racette
       State's Attorney Cook County



## SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CAROLYN TAFT GROSBOLL
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

November 2, 2018

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, Illinois 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Maurice Coleman
Reg. No. A-25160
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

Re: M.D.014099 – Coleman v. Kazmierski. Mandamus.

Dear Mr. Coleman:

It has just come to my attention that, due to a clerical error, the order you received entered by the Court on September 25, 2018, denying without prejudice petitioner's motion for leave to file a petition for an original writ of mandamus should have stated "The motion by petitioner for leave to file a petition for an original writ of mandamus is denied without prejudice to refile the 2-1401 petition in the circuit court." The Court's corrected order has been sent to the Circuit Court of Cook County, spread of record, and is enclosed for your records.

Thank you.

Very truly yours,

*Carolyn Taft Grosboll*

Clerk of the Supreme Court

CTG/ak/Encl.
cc: Circuit Court of Cook County
Cook County State's Attorney, Criminal Division
Paul Anthony Racette
State's Attorney Cook County

## 2018

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| A25160 | COLEMAN | MAURICE | 11/27/2018 | CIRCUIT CLERK | | 50 W WASHINGTON | CHICAGO | IL | |
| A25160 | COLEMAN | MAURICE | 12/11/2018 | CIRCUIT CLERK | Rf. 2-1401 | 2650 S CALIFORNIA AVE | CHICAGO | IL | PKG |
| A25160 | COLEMAN | MAURICE | 12/18/2018 | CIRCUIT CLERK | R.f 3-1401 | 50 W WASHINGTON | CHICAGO | IL | PKG |

## 2019

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| A25160 | COLEMAN | MAURICE | 1/2/2019 | JODI GARVEY | 53 W JACKSON BLVD | CHICAGO | IL |
| A25160 | COLEMAN | MAURICE | 1/17/2019 | CIRCUIT CLERK | 14 W JEFFERSON ST | JOLIET | IL |
| A25160 | COLEMAN | MAURICE | 1/22/2019 | ANTHONY GOLDNER | 55 W MONROE | CHICAGO | IL |
| A25160 | COLEMAN | MAURICE | 1/22/2019 | HELLER HOLMES AND ASSOCIATES | 1101 BROADWAY | MATTOON | IL |
| A25160 | COLEMAN | MAURICE | 1/22/2019 | JUSTINA SHOBAT | 53 W JACKSON BLVD | CHICAGO | IL |
| A25160 | COLEMAN | MAURICE | 1/22/2019 | NICHOLAS MCCANN | 55 W MONROE | CHICAGO | IL |

1- FOR DEFENDANT

Dorthy Brown

Clerk of the Circuit Court,

Appendixs A-K

MAURICE COLEMAN #A2460
PLAINTIFF'S APPENDIX'S
IS AS Followed

APPENDIX-A  1) INFORMA PAUPERIS APPLICATION/FINANCIAL AFFIDAVIT,
PAGES 1-5

APPENDIX-B  2) 1983 CIVIL COMPLAINT - PAGE'S 1-11.

APPENDIX-C  3) PROOF/CERTIFICATE OF SERVICE, PAGE 1 OF 1.

APPENDIX-D  4) RETURN RECEIPT FOR DELIVERY, PAGE 1 OF 1.

APPENDIX-E.  5) PETITION FOR RELIEF FROM VOID JUDGMENT
PAGES 1-20.

APPENDIX-F  6) PETITION OF MANDAMUS, PAGE'S 1 OF 2.

APPENDIX-G.  7) MOTION FOR DEFAULT JUDGMENT, PAGE 1 OF 1.

APPENDIX-H  8) LETTER TO CLERK OF THE COURT, PAGE 1 OF 1.

APPENDIX-I  9) LETTER FROM SUPREME COURT OF ILLINOIS, DATED
SEPTEMBER 25, 2019, PAGE 1 OF 1.

APPENDIX-J  10) LETTER FROM SUPREME COURT OF ILLINOIS, DATED
NOVEMBER 2, 2019, PAGE 1 OF 1

APPENDIX-K  LETTER FROM STATEVILLE PRISON MAILROOM Showing
THE DATE I REFILED MY 2-1401 PETITION
DATED 12/11/18 / 12/18/18. PAGE 1 OF 1.

                                    TOTAL PAGES 46

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,
                    RESPONDENT,

       VS.

MAURICE COLEMAN,
                    PETITIONER.

SECTION 2-1401 PETITION PROCEEDINGS.

CASE NO. : 81-6930.

BEFORE JUDGE:
HONORABLE JAMES M. SCHRIER.

## PROOF/CERTIFICATE OF SERVICE

TO: CLERK OF THE CIRCUIT COURT
    COOK COUNTY CRIMINAL DIVISION
    2650 SOUTH CALIFORNIA AVENUE, R.305
    CHICAGO, ILLINOIS 60608

TO: COOK COUNTY STATE'S ATTORNEY
    HONORABLE KIM FOXX
    300 DALEY CENTER
    CHICAGO, ILLINOIS 60602

TO: MAURICE COLEMAN - PETITIONER
    IDOC REG. NO. A 25760
    STATEVILLE CORR. CENTER
    P.O. BOX 112
    JOLIET, ILLINOIS 60434


PLEASE TAKE NOTICE THAT ON  OCTOBER 16 , 2017, I HAVE PLACED THE ATTACHED OR
ENCLOSED DOCUMENTS IN THE INSTITUTIONAL MAIL LABELED AS MOTION FOR DEFAULT
JUDGMENT AT THE STATEVILLE CORR. CENTER PROPERLY ADDRESSED TO THE PARTIES LISTED
ABOVE FOR MAILING, BY PREPAID CERTIFIED MAIL THROUGH THE UNITED STATES POSTAL
SERVICE.


DATE: 10-6-17

/s/ Maurice Coleman
MAURICE COLEMAN, PETITIONER
IDOC REG. NO. A 25760
STATEVILLE CORR. CENTER
P.O. BOX 112
JOLIET, ILLINOIS 60434


SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 6th DAY OF October, 2017.

David Mansfield
NOTARY PUBLIC

"OFFICIAL SEAL"
DAVID MANSFIELD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/26/2018

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CCSA

Kim Fox

1300 Daley Center

Chicago IL 60602

9590 9402 1774 6074 7862 32

2. Article Number (Transfer from service label)

7016 0340 0000 6429 3955

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x Robert J. Parten  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

ROBERT J. PARTEN  4/27/17

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Clerk of Circuit Court
of Cook County
2650 S. California Ave
Chicago IL 60608

9590 9402 1774 6074 7862 18

2. Article Number (Transfer from service label)

7016 0340 0000 6429 3931

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

APR 18 2017

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature
☐ Signatur Restrict

Domestic

IN THE

_____

_____

Maurice Coleman
Plaintiff,                          )
                                    )
v.                                  )  Case No. _____
                                    )
Dorothy Brown + Kim Fox             )
Defendant                           ) .

## PROOF/CERTIFICATE OF SERVICE

TO: Clerk of the Supreme Court        TO: To: Defendant Kim Fox
    Carolyn Taft Grobolc                  State Attorney
    200 East Capitol Ave                  50 W. Washington
    Springfield, Ill 6270-1721            Chicago Ill, 606

TO: To: Defendant                     TO: _____
    Dorothy Brown                         _____
    2650 So California Ave                _____
    Chicago Ill 60608                     _____

PLEASE TAKE NOTICE that on March 27 , 2019 I have placed the
documents listed below in the institutional mail at Stateville Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: To be E. Filed to the U.S. District
Court, Northern District of Illinois
Eastern Division

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: March 27, 2019               /s/ Maurice Coleman
                                   NAME: Maurice Coleman
                                   IDOC#: R25160
                                   _____ Correctional Center
                                   P.O. BOX 112
                                   Joliet , IL 60434